In re John GREEN, Jr. and Janice C. Green, Debtors.

John Green, Jr., Appellant,

v.

James E. O'Neill, Trustee, and First Farmers Bank, Appellees.

No. CIV.A.02–1476–KAJ.

United States District Court, D. Delaware.

March 31, 2004.

John Green, Jr., Rehoboth Beach, DE, pro se.

Karen C. Bifferato, Connolly, Bove, Lodge & Hutz, Wilmington, DE, for appellees.

## MEMORANDUM ORDER

JORDAN, District Judge.

### I. Introduction

Presently before the court is a *pro se* appeal by John Green, Jr. (the "Appellant") from the August 21, 2002 Order by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") that revoked the Appellant's bankruptcy discharge issued in connection with the Appellant's Chapter 7 proceeding. (Docket Item ["D.I."] 1.) Also before the court is the Trustee's[1] and Farmers First Bank's[2] (collectively the "Appellees") Motion to Dismiss the Appeal[3] (D.I. 17; the "Motion"). The court has jurisdiction over this case pursuant to 28 U.S.C. § 158.

1. The Trustee is James E. O'Neill.

2. Farmers First Bank is an unsecured creditor in the Appellants' Chapter 7 bankruptcy proceeding. (D.I. 15 at 4.)

3. The Appellees argue that because the Appellant has failed under Local Bankruptcy Rule 8006–1, "to take the action required of him with respect to the preparation and transmittal of the Record in the Bankruptcy Court, despite having a prolonged opportunity to do so," the appeal should be dismissed. (D.I. 18 at 2.) However, because of the liberal pleading standard for *pro se* complaints, because the Appellees have provided relevant portions of the record, and because the appeal will be denied on the merits, the Appellees' Motion will be denied.

For the reasons that follow, the decision of the Bankruptcy Court that is the subject of this appeal is affirmed, and the Appellants' Motion is denied.

## II. Background

In February 1989, the Appellant and his then-wife, Janice Green,[4] personally guaranteed a $1.3 million loan made by Farmers First Bank for the construction and furnishing of an EconoLodge Motel in Princess Anne, Maryland. (D.I. 15 at 4.) In 1993, the loan went into default, and Farmers First Bank accelerated and demanded payment. (*Id.*) On February 15, 1996, the Green's filed a Chapter 11 Bankruptcy Petition. (*Id.*) On December 29, 1998 the Bankruptcy Court entered a Notice of Conversion to Chapter 7 and Order appointing the Chapter 7 trustee. (*Id.* at 5.) On April 3, 1999, the Bankruptcy Court entered a discharge of the Appellant's and his ex-wife's debt. (*Id.*) On August 16, 1999, the Appellees filed a motion pursuant to 11 U.S.C. § 727(d) to revoke the discharge of that debt, alleging that the Appellant and his ex-wife had failed to satisfactorily explain or provide documentation regarding the loss of assets that preceded their bankruptcy. (*Id.* at 5–6.)

The Bankruptcy Court held an evidentiary hearing on August 13, 2002 with regard to the Appellees' allegations, and found that the Appellant "had in 1996 and continue[d] to have a personal, direct interest in a substantial property that was not disclosed in this bankruptcy case." (*Id.* at 6, 9.) "[B]ased upon the evidence presented, [the Bankruptcy Court] conclude[d] that that was an intentional withholding of information in this bankruptcy case and that that was a fraudulent concealment in violation of Section 727(d)(1) and (2)." (*Id.* at 9.) Pursuant to 11 U.S.C. § 727(d)(1) & (2), the Bankruptcy Court entered an order revoking and denying the discharge as to the Appellant[5] on August 21, 2002. (*Id.* at 7–10; D.I. 1.) On September 3, 2002, the Appellant filed a notice of appeal of the Bankruptcy Court's order. (*Id.*)

## III. Standard of Review

[1, 2] On appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). When reviewing mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercises 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)).

## IV. Discussion

[3] The Appellant appeals the Bankruptcy Court's August 22, 2002 Order on approximately 22 counts, but does not apply the appellate standard of review to any of his allegations. (D.I. 14.) Therefore, I will assume that the Appellant is alleging that the Bankruptcy Court's finding that the Appellant intentionally withheld his

---

4. The Appellant and Mrs. Green are now divorced, and Mrs. Green is now known as Janice Czarnecki. (D.I. 15 at 6.) However, I will refer to Ms. Czarnecki as Mrs. Green, in the same manner as the Bankruptcy Court.

5. The Court did not revoke the discharge of the Appellant's ex-wife, Janice Green. (D.I. 1.)

"personal, direct interest in a substantial property," specifically, a Canadian chalet (D.I. 15 at 8), was clearly erroneous.

In order to properly address the Appellant's claims, I must address the Bankruptcy's Court's bench ruling at the August 13, 2002 hearing. At that hearing, the Bankruptcy Court considered the testimony of Mrs. Green, the secretary of John Green Jr., Ltd., the corporation that purchased the chalet. Mrs. Green testified that the Appellant was the "sole beneficial owner of the shares of that corporation." (*Id.*) The Bankruptcy Court also noted that the "shareholder/board of directors resolution was signed by Mrs. Green as secretary" and "it would certainly be believable, indeed, unusual if the secretary of the corporation did not know who the title and/or beneficial owners were of the stock." (*Id.*) The Bankruptcy Court stated that Mrs. Green had no understanding that the Appellant's father had, as the Appellant alleged, any interest in the corporation. (*Id.*) Finally, the Bankruptcy Court said that "if the shareholder interest in John Green, Jr., Ltd. was owned by [the Appellant's] father and subsequently transferred to one of his children," as alleged by the Appellant, "that would be a very, very easy fact to prove ... and [the Appellant] has offered no such proof." (*Id.*) Based on this evidence, the Bankruptcy Court held that the Appellant's failure to disclose his interest in the chalet "was an intentional withholding of information." (*Id.* at 9.)

The Appellant argues that this finding was "was improper due to a lack of evidence." (D.I. 14 at 10.) Specifically, the Appellant alleges that "the only act the x-wife [sic] ever performed for the corporation was signing the resolution for the purchase of the property and that she was bitter over the Appellant having custody over the children and was extremely dis-

traught by this proceeding and had been promised a dismissal of the claims against her if she made the claim." (*Id.*) The Appellant also alleges that his admission that he "paid some operating expenses of the property" was "entirely consistent with the fact that Appellants parents were ... no longer able to handle their affairs themselves." (*Id.*) Other than making allegations that Mrs. Green, as the corporate secretary of John Green, Jr., Ltd., did not have personal knowledge of his stock ownership, or that Mrs. Green was biased, the Appellant has not offered any proof that the Bankruptcy Court's findings were clearly erroneous. Therefore, the Bankruptcy Court's finding that the Appellant had and withheld information regarding his interest in the Canadian chalet is not clearly erroneous.

■ As a matter of law, the Bankruptcy Court held that the Appellant's "intentional withholding of information ... was a fraudulent concealment in violation of Section 727(d)(1) and (2)" and thus revoked the Appellant's discharge. (*Id.* at 9–10.) I review this legal conclusion *de novo*. 11 U.S.C. § 727(d) states that:

the court shall revoke a discharge ... if (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge; (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee

The Appellant does not argue that he reported the chalet in his Bankruptcy Court proceedings. Rather, he argues that the Bankruptcy Court erred in holding "that the failure to disclose the 'Canadian prop-

erty' was fraudulent concealment within the meaning of Section 727(d)(1) and (2)" because Farmers First Bank knew the Canadian chalet existed when the motel construction loan was made in 1989. (D.I. 14 at ¶ 19.) Even if there were evidence in the record to support the Appellant's assertion, and there is not, any knowledge that Farmers First Bank obtained about the property would not have excused the Appellant, as the sole shareholder of the corporation that purchased the chalet, from disclosing the property in his bankruptcy court filings. *See* 11 U.S.C. § 727(d)(2); *see also* Bankruptcy Rule 1019(4).[6]

■ The Appellant also argues that the Appellees did not allege fraudulent concealment of the Canadian chalet in their 1999 Complaint to revoke the order of discharge. (D.I. 14 at ¶ 17.) The Appellant raised this argument at the evidentiary hearing, and the Bankruptcy Court held that the Appellant "had sufficient notice that the chalet was going to be an issue addressed in this proceeding" and "view[ed] the matter as a deemed amendment to the pleading." (*Id.* at 9.) I agree with the Bankruptcy Court. First, the Complaint put the Appellant on notice that the Appellees were seeking an evidentiary hearing to question him about his financial affairs and the extent of his assets. (D.I. 16 at 7.) Second, even if the Appellant's concealment of the Canadian chalet had to be raised in a pleading, Bankruptcy Rule 7015(b)[7] gives the Bankruptcy Court dis-

cretion to "freely" permit amendment of the pleadings and there is no showing that the Bankruptcy Court abused its discretion in deeming the pleading amended. Finally, there is no evidence that the Appellant was prejudiced by the amendment, especially since it would have been "very easy" for him to prove that he did not own the chalet, and he did not do so. (D.I. 15 at 8.)

■ The Appellant further argues that the Bankruptcy Court improperly placed the burden on him to disprove his ownership in the Canadian property. (D.I. 14 at ¶ 21.) Citing *In re Topper,* 85 B.R. 167 (Bankr.S.D.Fla.1988), the Appellant correctly states that the burden is on the party seeking revocation to show the discharge had been procured by fraud and that sufficient grounds existed that would have prevented the discharge had they been known and presented in time. (*Id.*) These are the second and third elements that the party seeking revocation of the discharge must prove. The threshold issue is that the "party requesting revocation of discharge must prove his lack of knowledge of the fraud prior to discharge." *In re Topper,* 85 B.R. at 169.

Here, the record supports the Appellees' lack of knowledge of the fraud. (D.I. 16 at 92–93, 100–101.) The other two requirements, that the burden is on the party seeking revocation to show the discharge had been procured by fraud, and that sufficient grounds existed that would have pre-

---

6. B.R. 1019(4) provides that "[a]fter qualification of, or assumption of duties by the chapter 7 trustee, any debtor in possession or trustee previously acting in the chapter 11, 12, or 13 case shall, forthwith, unless otherwise ordered, turn over to the chapter 7 trustee all records and property of the estate in the possession or control of the debtor in possession or trustee."

7. B.R. 7015(b) provides that "[i]f evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits."

vented the discharge had they been known and presented in time are likewise supported by the record. The Appellees have demonstrated that the Appellant did not list his interest in the Canadian property in the schedule of assets and statement of financials affairs, and "a knowing and fraudulent omission from a sworn statement of affairs or schedule, may constitute a false oath sufficient to bar discharge." *Id.* at 170. Because the "effectiveness of a bankruptcy administration rests in large part on access to a debtor's financial records and on his honesty and candor," and the Appellant has not met the standard of candor, accuracy and integrity required of a debtor in bankruptcy, I affirm the Bankruptcy Court's holding that the Appellant's omission was fraudulent and intentional under 11 U.S.C. § 727(d), and affirm the Bankruptcy Court's revocation of the Appellant's discharge.

■ The Appellant also contends that Farmers First Bank had no standing to challenge his discharge. (D.I. 14 at ¶ 4.) Section 727(d) of the Bankruptcy Code states that "a trustee, a creditor, or the United States trustee" may request the Court to revoke the discharge. Section 101(10)(A) of the Bankruptcy Code defines the term "creditor" as an "entity that has a claim against the debtor that arose at the time or before the order for relief concerning the debtor ...." Under § 101(5)(A), the term "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." The Appellant does not, and cannot be heard to argue that Farmers First Bank does not have a claim against him. Therefore, Farmers First Bank is a creditor under the Bankruptcy Code, and, as a creditor, Farmers First Bank had standing to re-

quest that the Appellant's discharge be revoked under § 727(d).

■ Furthermore, the Appellant argues that the Bankruptcy Court erred in forcing the Appellant to proceed after he "advised the Court that he was not having a good day and not mentally competent at the time." (D.I. 14 at ¶ 11.) While the Appellant does not submit evidence of his alleged incompetence, the Appellees have provided a letter that the Appellant allegedly attached to his proposed list of exhibits at the evidentiary hearing in which Melody Benson, M.D., opined that the Appellant had a "chronic single episode of major depression." (D.I. 16 at 112.) However, "[t]he fact that defendant may suffer from some level of mental disturbance does not mean that he is incompetent in the legal sense." *State v. Wynn,* 490 A.2d 605, 610 (Del.Super.1985). Because there is no evidence before me that the Appellant is incompetent, and because the Bankruptcy Court observed the Appellant periodically over a span of several years, I hold that the Bankruptcy Court did not err in proceeding with the evidentiary hearing. *See In re Mayer,* 198 B.R. 116, 122 n. 1 (Bankr.E.D.Pa.1996) (holding that a court can make a determination of mental competency based on its observation of the party appearing before it). The Appellant also argues that, because of his "mental limitations," he was denied a fair trial (D.I. 14 at ¶¶ 12–15). This argument is not well founded. The Appellant was legally competent and therefore was not denied a fair trial.

Finally, the Appellant argues that the Bankruptcy Court violated "basic judicial process" (*Id.* at ¶ 3), that he was deprived legal counsel (*Id.* at ¶ 5), that the Bankruptcy Court erred in not dismissing the case on the principles of res judicata (*Id.* at ¶ 7), and that the Bankruptcy Court erred in not finding laches to be a defense (*Id.* at ¶ 8). Because the Appellant does

not connect any of these allegations to the record, these claims will be denied. *See Hornick v. I.R.S.*, 252 B.R. 897, 899 (W.D.Pa.2000) (because the record was incomplete, the appellant could not demonstrate that the challenged findings of fact of the Bankruptcy Court were clearly erroneous or the challenged conclusions of law were improper.)

## V. Conclusion

Accordingly, IT IS HEREBY ORDERED that the decision of the Bankruptcy Court which is the subject of the Appellants' appeal (D.I. 16 at) is AFFIRMED and the Appellees' Motion (D.I. 17) is DENIED.